FILED
CLERK, U.S. DISTRICT COURT
MAY -8 2008
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HANH KHUU<br><br>Defendant. | Case No. CR 05-281-GAF<br><br>**ORDER RE:**<br>**MOTION FOR NEW TRIAL** |

Defendant Khuu moves for a new trial based on newly discovered evidence. Because the evidence alleged to have been newly discovered (1) is not relevant to any substantive issue in the case; (2) is at most impeachment evidence relating to a witness whose testimony was not central to the case; and (3) would not likely change the result in this case, the motion is **DENIED**.

A. BACKGROUND

*1. The Investigation and Conviction*

Defendant Khuu was investigated as a possible participant in a marriage fraud scheme whose objective was to establish a purported basis for non-

citizens to obtain an I-130 immigrant visa. The investigators assigned to her case were Special Agents Mendoza and Roldan of Immigration and Customs Enforcement (ICE). Khuu was interviewed at an early stage of the investigation and claims that she offered to cooperate but that she did not wish to work with Special Agent Mendoza because he made improper sexual advances toward her. Khuu asserts that, because she rebuffed SA Mendoza's advances, he became antagonistic toward her which cost her the opportunity to work as a cooperator.

Eventually Khuu was indicted on two counts of making false statements regarding her marital status in I-130 petitions submitted to the United States Citizenship and Immigration Service, and was convicted on both counts after trial. Agent Mendoza testified at trial regarding Defendant Khuu's submission of handwriting exemplars and to the details of a statement Defendant Khuu made in an interview on the date of her arrest. Khuu did not contest the authenticity of the exemplars and testified in her defense case regarding many of the subjects that were covered in Agent Mendoza's testimony. Khuu's trial testimony, though more detailed, was largely consistent with her post-arrest statement to Agent Mendoza. At trial, Khuu did not attempt to impeach Agent Mendoza with allegations of his alleged improper advances, nor did she testify on that subject during her own testimony.

Defendant Khuu now contends, and her attorney confirms in a written declaration, that she reported Agent Mendoza's alleged advances prior to trial, which commenced on June 27 and concluded on June 29, 2006. Although known to Khuu and her counsel prior to trial, evidence of the alleged improper advances was not offered as evidence at trial and the information was not otherwise brought to the attention of the Court. Defendant Khuu now explains that her attorney decided not to make an issue of the advances because he concluded that she would not be believed. On this last point, however, the declaration of her counsel is silent and the record is therefore devoid of any

evidence regarding the attorney's thought processes regarding the issue. In any event, it is undisputed that this evidence, which was known to her and her counsel, was never presented at her trial.

### 2. Post-Trial

After Khuu's conviction on June 29 and before her sentencing date, the prosecution advised her that Agent Mendoza had become the subject of an investigation by the Immigration and Customs Enforcement Office of Professional Responsibility (OPR) for alleged improper conduct.[1] The investigation was initiated because Agent Mendoza conducted an unauthorized traffic stop near an elementary school in Arcadia, California in mid-May 2006. The stop was reported to the Arcadia Police Department, which in turn reported it to the FBI. The FBI conducted an initial series of interviews and, ultimately, concluded that no criminal conduct had occurred.

After reaching this conclusion, which occurred *after the trial in this case had concluded*, the FBI referred the matter to ICE OPR on July 7, 2006. On or about July 17, 2006, the OPR investigation received information which connected SA Mendoza to Lisa Lam and a possible relationship between the two of them. Lam was further identified as having been arrested in 2003 in connection with a marriage fraud scheme, and as a cooperator in two other investigations, neither of which involved Ms. Khuu in any capacity. Khuu was also interviewed as part of that investigation. Ultimately, the investigation established that SA Mendoza indeed had a relationship with a cooperating co-defendant (Lisa Lam) in another, unrelated case, but concluded that Ms. Khuu's allegations of improper conduct toward her could not be substantiated.

---

[1] A copy of the OPR Report has been filed in camera with the Court. The Court has reviewed that report and considered its contents along with the papers submitted by the parties in connection with this motion and their arguments at the hearing on the motion. The Court finds no basis on which the contents of the report should be disclosed to Khuu's counsel.

### 3. *The Motion*

Defendant Khuu moves for a new trial on the ground that the OPR investigation constitutes new evidence that warrants a new trial. Essentially she contends that, had she known of this information, she would have testified concerning the improper advances made by SA Mendoza because she might have been believed if she had had the ability to impeach his testimony. In support of this claim, Khuu argues that a jury could have concluded that SA Mendoza had a weakness for young Asian women, as evidenced by his relationship with Ms. Lam, and that such evidence would have been admissible to prove that he attempted to have a similar relationship with Ms. Khuu. In addition, Khuu contends that, had she had the ability to impeach Agent Mendoza and to show his alleged animosity toward her, she could have demonstrated that he misled her into seeking to withdraw the falsified petitions as a means of showing that she had submitted them in the first place.

## B. DISCUSSION

First, the Court notes that the motion and the evidence reviewed by the Court does not establish a <u>Brady</u> violation. The information at the center of this motion – SA Mendoza's relationship with Ms. Lam – was not known to anyone at ICE and was not the subject of the ICE OPR investigation until after the conclusion of this trial. Shortly after SA Mendoza became a subject of the OPR investigation, that fact was disclosed to the defense after which the Court indefinitely continued the sentencing hearing in this case.

Second, the motion is premised on the notion that the Court would have admitted evidence of the OPR investigation to prove that SA Mendoza's relationship with another young female Asian defendant proves that he has a predilection for women who meet that description, that he therefore sought to have an improper relationship with Ms. Khuu, and that when his advances were rebuffed, he sought to "railroad" Ms. Khuu. The Court would not have

permitted the presentation of such evidence at trial. The Court has serious doubt that the evidence is relevant in the first place, but, under Rule 403, any limited probative value of such evidence would have been substantially outweighed by the risk of undue prejudice, jury confusion and undue consumption of time. This is particularly the case because, as discussed below, SA Mendoza's testimony was unremarkable and largely undisputed. Likewise, the Court would not have permitted the evidence under Rule 608, which precludes the use of specific instances of misconduct to impeach, except in very limited circumstances not present here.

The Court next turns to the elements of the new trial motion.

Rule 33 provides in pertinent part:

> Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

The Ninth Circuit has established a five-part test for determining whether the moving party has satisfied the requirements of the rule:

> (1) the evidence must be newly discovered;
>
> (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;
>
> (3) the evidence must be material to the issues at trial;
>
> (4) the evidence must be neither cumulative nor merely impeaching; and
>
> (5) the evidence must indicate that a new trial would probably result in acquittal.

United States v. Jackson, 209 F. 3d 1103, 1106 (9th Cir. 2000); United States v. Kulczyk, 931 F. 2d 542, 548 (9th Cir. 1991).

In this case, the motion fails on several grounds. First, the declarations presented by the defense prove that evidence that SA Mendoza supposedly harbored resentment or hostility toward Khuu because she rebuffed his advances was known before this case was tried. Such evidence cannot properly be described as "newly discovered." United States v. McKinney, 952 F. 2d 333, 334 (9th Cir. 1991) ("The evidence was not discovered after the trial, meaning after the verdict was received, and therefore it is not newly discovered.") Even if such evidence is true, the evidence and its potential significance was known prior to trial. That it was not used, even if because of concerns that it would not be believed, provides no basis for granting a new trial in these circumstances.

Second, the evidence is not material to the issues at trial, but rather is sought to impeach SA Mendoza if, when confronted with allegations of having made improper advances toward Khuu, he denied that those events occurred. Case law makes clear that evidence that would be only impeaching is not the sort of evidence that warrants a new trial. United States v. Waggoner, 339 F. 3d 915, 919 (9th Cir. 2003); United States v. Sarno, 73 F. 3d 1470, 1507 (9th Cir. 1995). Moreover, even if this evidence were presented at trial, it would not likely result in an acquittal. SA Mendoza's testimony addressed issues that Defendant Khuu either admitted or did not seriously contest at trial. Moreover, her contention that she could have impeached SA Mendoza regarding his tricking her into seeking to withdraw the fraudulent petitions ignores that the witness who testified on this issue at trial was SA Roldan. SA Roldan testified that: (1) while Khuu did not admit submitting the falsified petitions, she admitted traveling to China and posing for "wedding theme" photographs with Chinese men and children; (2) Khuu raised the issue of how the petitions could be withdrawn; (3) that he obtained for her the identifiers on the petitions; and (4) that he later learned that she had written to withdraw the petitions. By withdrawing them, she was acknowledging that she had submitted them in the

first place, but that is not the only evidence that she filed the petitions. The prosecution presented the testimony of a fake husband who admitted that he "married" Khuu for the purpose of obtaining admission into the United States. Likewise, the handwriting analysis comparing Khuu's known handwriting to the questioned writing on the peitions established to a high degree of probability that Khuu had signed the falsified I-130 petitions. Thus, even if evidence had been presented that her decision to seek to withdraw the petitions was the result of some sort of trickery, there is little chance that it would have changed the result given the weight of the remaining evidence presented at trial.

## C. Conclusion

For the foregoing reasons, the motion for new trial is **DENIED.**

The parties are to submit a stipulation and order setting this matter for sentencing.

IT IS SO ORDERED.

DATED: May 7, 2008

_____
Judge Gary Allen Feess
United States District Court